TIMOTHY M. BURGESS
UNITED STATES ATTORNEY

KAREN L. LOEFFLER
Assistant U.S. Attorney
Federal Building & U.S. Courthouse
222 West Seventh Avenue, Room 253, #9
Anchorage, Alaska 99513-7567
Phone: (907) 271-5071
Fax: (907) 271-1500
Email: karen.loeffler@usdoj.gov

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No. |
| | ) | |
| Plaintiff, | ) | COUNTS 1 - 8: |
| | ) | BANK FRAUD |
| vs. | ) | Vio. 18 U.S.C. § 1344 (1) and (2) |
| | ) | |
| WILLIAM E. ALLEN, | ) | COUNTS 9 - 16: |
| | ) | PASSING COUNTERFEIT |
| Defendant. | ) | MONEY ORDERS |
| | ) | Vio. 18 U.S.C. § 500 |
| | ) | |
| | ) | COUNTS: 17 - 19: |
| | ) | ENGAGING IN MONETARY |
| | ) | TRANSACTIONS IN |
| | ) | CRIMINALLY DERIVED |
| | ) | PROPERTY |
| | ) | Vio. 18 U.S.C. § 1957 |
| | ) | |

# INDICTMENT

The Grand Jury charges that:

General Allegations

At all times material to this indictment

1. William Allen did business as Anchor International Ministries, Inc. ("AIM") and A.I.M. General Services Inc.

2. Northrim Bank ("Northrim"), The Alaska First Bank and Trust ("AFBT"), First National Bank of Anchorage ("FNBA"), and Key Bank were financial institutions, the accounts of which were insured by the Federal Deposit Insurance Corporation ("FDIC").

3. Credit Union One was a financial institution the accounts of which were insured by the National Credit Union Administration Board.

COUNTS 1- 8: Bank Fraud

The Scheme

4. Beginning at a time unknown, but at least by on or about September 3, 2002, and continuing thereafter until in or about September 28, 2005, the defendant, WILLIAM E. ALLEN, in the District of Alaska, knowingly executed and attempted to execute a scheme and artifice to defraud Northrim, AFBT, FNBA, Key Bank and Credit Union One and to obtain moneys, funds, credits, and assets, owned by and under the custody and control of said financial institutions by means of false and fraudulent pretenses, representations and promises.

Purpose of the Scheme

5.	The purpose of the scheme was for WILLIAM ALLEN to obtain funds to which ALLEN was not entitled by depositing and attempting to deposit counterfeit instruments with the purpose of then withdrawing funds based on said fraudulent deposits.

Manner and Means

6.	The defendant, WILLIAM E. ALLEN, carried out the scheme, as described below:

	a.	On September 4, 2002, Northrim received by mail a counterfeit check purportedly written to AIM, Inc. on an account of Southwest Bank of Texas in the amount $49, 953, to Northrim Bank for deposit. ALLEN then attempted to negotiate the check on September 4, 2002, at which time he was told that there was a hold on the check and funds would not be available until September 12, 2002. Despite this warning, ALLEN, attempted to obtain $10,000 from these funds on September 9, 2002. He was told by bank officers that the check was counterfeit, and this was a scam.

	b.	On November 26, 2002, ALLEN deposited a counterfeit check purportedly written to AIM General Services, on an account of Augusta Service Company, Augusta, Georgia in the amount of $50,000 into an account at AFBT. ALLEN then withdrew approximately $47,000 from that account in checks to cash and cashier's checks between December 2, 2002 and December 6, 2002. He then transferred most of

the money to another financial institution and wired it to an individual in Nigeria. On December 6, 2002, the original deposit check was returned to AFBT as fraudulent. ALLEN was informed by AFBT that the check was fraudulent.

        c.       On or about November 25, 2003, ALLEN attempted to deposit a counterfeit check purportedly written to AIM General Services, Inc. on an account of Loehmann's Operating Co., Bronx, New York, in the amount of $115,000 into an account at FNBA. ALLEN requested to receive cash from the deposit, but the check was refused and ALLEN then left the bank with it.

        d.       On or about November 8, 2004, an associate of ALLEN attempted to deposit a counterfeit check purportedly written to AIM General Services, Inc. on an account of ASRC Federal Holding Company, LLC, Greenbelt, MO. in the amount of $49,282.67 at FNBA. The associate was told that FNBA would not deposit the check, but that he could return with a cashier's check from Key Bank, the bank on whose account the ASRC check was purportedly written. The associate then successfully obtained a cashier's check from Key Bank based on the counterfeit check, deposited the cashiers check in ALLEN's FNBA, AIM General Services, Inc. account and proceeded on ALLEN's instructions to transfer most of the monies into another ALLEN account and withdraw the funds in cash. ALLEN was told by FNBA officers, on or about, November 17, 2004, that the check he had caused his associate to negotiate at Key Bank was fraudulent.

e. On or about November 22, 2004, another associate of ALLEN, at ALLEN's request, attempted to obtain a cashier's check at Key Bank with a counterfeit ASRC check purportedly made out to AIM General Services, Inc. in the amount of $26,981.40. The check was refused and the associate then spoke to ALLEN.

f. Between on or about November 24, 2004, and on or about December 13, 2004, Allen deposited 25 counterfeit postal money orders in amounts totaling $24,400 at 3 separate branches of Credit Union One. Some of the deposits were made at the three different branches on the same day. ALLEN then withdrew approximately $14,820 from these counterfeit money orders.

g. On or about March 25, 2005, ALLEN attempted to deposit a counterfeit check purportedly written to AIM General Services, Inc. on the account of Coca Cola, LTD Canada in the amount of $365,871.09 at FNBA. ALLEN left a deposit slip at the bank with the check and requested that a receipt be mailed to him. The check was refused for deposit.

h. On or about September 28, 2005, ALLEN attempted to deposit a counterfeit check purportedly written to William E. Allen on the account of Chicago Bridge and Iron Company (Delaware), Woodlands, Texas in the amount of $29,381.85 by mailing it to Credit Union One for deposit into his account. Upon receipt officers at Credit Union One contacted ALLEN who first said that he was expecting the check then denied knowledge of the check when informed that it was fraudulent.

7.  As a result of the scheme, ALLEN fraudulently obtained approximately $123,682.67 and attempted to obtain another $587,187.34 in fraudulent deposits.

## Acts in Execution

8.  On or about the dates set forth below, in the District of Alaska, the defendant, WILLIAM E. ALLEN, knowingly executed and attempted to execute the above described scheme, by depositing or attempted to deposit counterfeit instruments at various financial institutions, with each deposit or attempted deposit of a counterfeit instrument identified by date, amount and financial institution. alleged as a separate and distinct count.

| Count | Date | Financial Institution | Amount |
|---|---|---|---|
| 1 | 9/3/2002 - 9/9/2002 | Northrim | $49,953 |
| 2 | 11/26/2002 | AFBT | $50,000 |
| 3 | 11/25/2003 | FNBA | $115,000 |
| 4 | 11/8/2004 | FNBA and Key Bank | $49,282.67 |
| 5 | 11/22/2004 | Key Bank | $26,981 |
| 6 | 11/24/2004 - 12/13/2004 | Credit Union One | $24,400 |
| 7 | 03/25/2005 | FNBA | $365,871.09 |
| 8 | 09/28/2005 | Credit Union One | $29,381.85 |

All of which is in violation of Title 18, United States Code, Sections 1344(1) and (2).

### COUNTS 9-16: COUNTERFEIT MONEY ORDERS

9. Paragraph 6f. is re-alleged and incorporated herein.

10. On or about the dates set forth below, in the District of Alaska, the defendant, WILLIAM E. ALLEN, with intent to defraud, presented and caused to be presented, money orders knowing the same to contain, forged and counterfeited signatures, initials and stamped impressions, and to have been unlawfully issued without previous payment of the amount required to be paid upon such issue and to have been stamped without lawful authority, with each deposit of a counterfeit money order or orders as identified by date, location of deposit and total amount, alleged as a separate and distinct count:

| Count | Date | Location and Number of Money Orders | Amount |
| --- | --- | --- | --- |
| 9 | 11/24/2004 | Credit Union One Midtown/ 2 MO's | $1,930 |
| 10 | 11/24/2004 | Credit Union One S. Anchorage/ 2 MO's | $1,940 |
| 11 | 11/24/2004 | Credit Union One Debarr/ 1MO | $980 |
| 12 | 12/09/2004 | Credit Union One Midtown/ 5 MOs | $5,000 |
| 13 | 12/09/2004 | Credit Union One S. Anchorage/ 4 MO's | $4,000 |
| 14 | 12/10/2004 | Credit Union One Debarr/ 2 MO's | $2,000 |
| 15 | 12/13/2004 | Credit Union One S. Anchorage/ 5 MO's | $4,750 |
| 16 | 12/13/2004 | Credit Union One Midtown/ 4 MO's | $3,800 |

All in violation of Title 18, United States Code, Section 500.

COUNTS 17-19: ENGAGING IN MONETARY TRANSACTIONS IN CRIMINALLY DERIVED PROPERTY

11. On or about the dates set forth below, in the District of Alaska, the defendant, WILLIAM E. ALLEN, did knowingly engage and attempt to engage in a monetary transaction by, through or to a financial institution, affecting interstate or foreign commerce, in criminally derived property of a value greater than $10,000, this is the deposit, withdrawal, or exchange of funds or monetary instruments, such property having been derived from the specified unlawful activity of bank fraud, with each monetary transaction identified below by date, transaction and amount alleged as a separate and distinct count.

| Count | Date | Monetary Transaction | Amount |
|---|---|---|---|
| 17 | 12/02/2002 | Deposit of a $31,000 cashier's check # 65474 into Alaska USA Federal Credit Union Account No. 665989, that was purchased with the proceeds of a $50,000 counterfeit check drawn on purported account of Augusta Service Co., Augusta, Georgia and deposited into AFBT account no. 101042345 | $31,000 |
| 18 | 11/8/2004 | Deposit of cashier's check #472179492 for $49,282 into FNBA account no. 30313589. Check was purchased at Key Bank based on proceeds of counterfeit check purportedly drawn on the account of ASRC. | $49,282.67 |
| 19 | 11/9/04 | Withdrawal of $47,000 from AIM, Inc. account at FNBA transferred from FNBA account no. 30313589 and representing proceeds of Key Bank cashier's check deposited into AIM General Services Account no. 30313589. | $47,000 |

All in violation of Title 18, United States Code, Section 1957.

A TRUE BILL.

_____
GRAND JURY FOREPERSON

/s Karen L. Loeffler
KAREN L. LOEFFLER
Assistant U.S. Attorney
222 West 7th Ave., #9, Rm. 253
Anchorage, AK 99513-7567
Phone: 907-271-5071
Fax: 907-271-1500
Email: karen.loeffler@usdoj.gov
AK # 8511173


/s Deborah Smith for
TIMOTHY M. BURGESS
United States Attorney
222 West 7th Ave., #9, Rm. 253
Anchorage, AK 99513-7567
Phone: 907-271-5071
Fax: 907-271-1500
Email: tim.burgess@usdoj.gov


DATED:  1/18/06